IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO.2:23-CV-49

| | |
|---|---|
| CHANDRA FULLARD, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CITY OF RALEIGH and ) <br> RALEIGH-WAKE EMERGENCY ) <br> COMMUNICATIONS CENTER, ) <br> A DEPARTMENT OF THE ) <br> CITY OF RALEIGH ) <br> Defendant. ) | **AMENDED COMPLAINT** |

NOW COMES Plaintiff, Chandra Fullard ("Ms. Fullard"), complaining of the City of Raleigh and Raleigh-Wake Emergency Communications Center, a Department of the City of Raleigh, and alleges as follows:

### I. INTRODUCTION

1. This action is brought to remedy discrimination against Ms. Fullard in the terms, conditions, and privileges of employment, and to recover damages she suffered as a result of sexual discrimination, sexual harassment, and retaliation.

### II. JURISDICTION AND VENUE

2. Ms. Fullard timely filed a Charge of Discrimination against the City with the Equal Employment Opportunity Commission ("EEOC"), complaining of sexual harassment, sex discrimination, and retaliation, a copy of which is attached hereto as **Exhibit A**. The Charge was filed on September 27, 2022, within the 180-day jurisdictional limitation for investigation by the EEOC of the events that occurred in the summer and fall of 2021 and thereafter.

1

3. On June 4, 2023, the EEOC issued a <u>Dismissal and Notice of Rights</u>, a copy of which is attached hereto as **Exhibit B**. Ms. Fullard has complied fully with all jurisdiction requisites necessary to proceed in this Court under Title VII.

4. This Complaint is brought under Title VII of the Civil Rights Act of 1964, as amended, as now set forth in 42 U.S.C. § 2000 *et seq*.

5. Jurisdiction of this Court is invoked under the provisions of §§ 1331 and 1343(3) of Title 28 of the United States Code.

6. The unlawful acts and practices alleged below were all committed within the Eastern District of North Carolina; therefore, venue is proper.

### III. THE PARTIES

7. Plaintiff, Ms. Fullard, is a citizen and resident of the United States residing in Currituck County, North Carolina. At the time of the events set forth below, Plaintiff was an employee of the City of Raleigh and Raleigh-Wake Emergency Communications Center, a department of the City of Raleigh.

8. Defendants are the City of Raleigh and Raleigh-Wake Emergency Communications Center, a department of the City of Raleigh in Wake County, North Carolina (hereinafter referred to as "Defendants" or "the City").

### IV. FACTUAL ALLEGATIONS

9. Ms. Fullard began her employment with the City on June 1, 2021. She managed and supervised training staff as part of her responsibilities.

10. Ms. Fullard's position was "Training and Development Analyst" with the working title of "Training Manager".

11. Ms. Fullard's primary responsibility consisted of developing, planning, and administering the City's training and development program for the in-house Training Academy.

12. Prior to commencing her employment with Defendants, Ms. Fullard worked for fifteen (15) years as a Training Analyst with the Emergency Communications Center in Durham, North Carolina. During her tenure in Durham, there were never any complaints or disciplinary actions taken against her, nor did she have any complaints or issues with her colleagues or supervisors.

13. Upon the commencement of her employment withthe City, Ms. Fullard was directly supervised by Dominick Nutter ("Mr. Nutter"), who was during the relevant time, and remains, the Emergency Communications Director of the Raleigh-Wake Emergency Communications Center.

14. Ms. Fullard personally experienced no issues of any kind in her first few months working for Defendants.

15. However, in late August 2021, Mr. Nutter scheduled a meeting with Ms. Fullard in his office. When she arrived, he requested that she close the door. Mr. Nutter then asked her to move her chair closer to his desk.

16. At this same meeting, Mr. Nutter asked Ms. Fullard to come around to his side of the desk to view an approximately seven (7) minute training video. After acquiescing, and while she was watching the video, Ms. Fullard noticed that he stared at her breasts during the entire duration of the video. This incident caused her severe anxiety and depression.

17. In late August/early September of 2021, Ms. Fullard was carrying work items when she encountered Mr. Nutter. He offered to carry some of the items she was holding and then purposely touched her breasts when he grabbed the items from her.

3

18. On another occasion, Mr. Nutter interrupted a conversation Ms. Fullard was having with another manager and stated, "You're buttering the wrong bread, I'm the one you need to talk to if you want to get what you need."

19. Another incident occurred when Mr. Nutter stated to Ms. Fullard, "You never thanked me by the way," to which she replied, "thank you for what?" to which he stated "for the money in your bank account. I'll give you everything you want." She returned to her office and was so upset by this sexually suggestive interaction that other employees asked if she was alright.

20. In a separate incident, Mr. Nutter asked Ms. Fullard how she could afford her vehicle to which she responded by saying that it was a female family member's vehicle. Mr. Nutter then said, "Oh, she must have money. I don't want you anymore, I want her."

21. On multiple occasions Mr. Nutter demanded that Ms. Fullard visit his office for unnecessary reasons. At some point, Ms. Fullard notified another manager, Aparicio Clifton ("Mr. Clifton"), who was close with Mr. Nutter, that she felt it was inappropriate for Mr. Nutter to demand her to continue going to his office, especially with COVID restrictions in place during this time frame.

22. Finally, in October of 2021, Mr. Nutter called Ms. Fullard on Microsoft TEAMS to thank her for asking him to approve a work request.

23. During this video call, Mr. Nutter was unaware that there were **two (2) other female staff members** at an in-person meeting with Ms. Fullard. He advised that he was calling her specifically so that she could see the words coming out of his mouth, then licked his lips and stated, "All you have to do is come to me, and I'll give you everything you want and need; just come for me." He continued this type of conversation for approximately ten (10) minutes without realizing the other two female employees were watching and listening.

4

24. Both female colleagues encouraged Ms. Fullard to immediately file a complaint with Human Resources.

25. Ms. Fullard lodged her complaint with Mr. Clifton who then contacted Human Resources. Antonio Cruz ("Mr. Cruz"), with the City of Raleigh Human Resources Department, conducted the internal investigation.

26. On October 21, 2021, Ms. Fullard was concerned that Mr. Nutter was aware of the investigation into his conduct because his conduct toward her had completely changed to the point where he was not only ignoring her but acting in a disrespectful and unprofessional manner.

27. On October 22, 2021, Ms. Fullard spoke with Mr. Cruz and informed him that she felt as though she was being retaliated against and could anything be done in the interim to address her concerns. The answer was no.

28. Instead, she was told the investigation would be concluded in approximately two (2) weeks. She then requested to take her sick and vacation days to avoid the stress and anxiety she was feeling at her place of employment.

29. More than three (3) weeks later, Ms. Fullard had exhausted all her paid leave and the investigation still had not concluded. She requested additional paid leave and was denied.

30. Finally, on January 4, 2022, more than eighty-four (84) days after the complaint was filed with Human Resources, Mr. Cruz **substantiated** Ms. Fullard's claims against Mr. Nutter, acknowledged inappropriate action by Mr. Nutter, and promised that "management would take appropriate corrective action regarding their matter." (See **Exhibit C** attached hereto).

31. Ms. Fullard was offered two (2) options - the first being a return to work with a different supervisor but would still have minimal interaction with Mr. Nutter; the

5

Case 2:23-cv-00049-D-BM   Document 11   Filed 11/03/23   Page 5 of 11

second was taking another position within the City of Raleigh. Ms. Fullard was terrified to return to work with Mr. Nutter still the Director and in control over her employment. She also did not want another position with a different department within the City of Raleigh as she had trained her whole career to be in emergency management services.

32. Without any other reasonable options available to her, Ms. Fullard continued to argue for Mr. Nutter to be removed from his position.

33. In January of 2022, Ms. Fullard received notice from the City that it had retained another person temporarily for her position and her office had been cleaned out.

34. On February 1, 2022, the City sent Ms. Fullard a 30-day Notice of Termination due to her failure to accept reasonable accommodations.

35. Ms. Fullard, on her own initiative and through her attorney, sent numerous communications to the City stating that the accommodations were not reasonable and that she was the person being retaliated against for lodging a complaint against Mr. Nutter which was substantiated.

36. Mr. Nutter remains the Emergency Communications Director despite his history of sexual discrimination, harassment and creating a hostile work environment.

37. Ms. Fullard is still out of work, suffers from post-traumatic stress, has significant anxiety and is in therapy for her psychological issues directly related to this discrimination and harassment.

38. Upon information and belief, these are not the first claims against Mr. Nutter for sexual discrimination and harassment.

39. On June 4, 2023, the U.S. Equal Opportunity Commission dismissed the EEOC charge and issued a notice of right to sue.

40. This Complaint has been filed within 90 days of receipt of the Dismissal and Notice of Rights.

41. Ms. Fullard has exhausted all applicable administrative remedies as required by Title VII of the Civil Rights Act of 1964, as amended.

## V. FIRST CLAIM FOR RELIEF:

## TITLE VII SEXUALHARASSMENT AND DISCRIMINATION

### (Hostile Work Environment)

42. Ms. Fullard adopts and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

43. Ms. Fullard is a member of a protected class, female.

44. Ms. Fullard was subjected to unwelcome sexual harassment by Mr. Nutter.

45. The harassment was based on Ms. Fullard's sex, female.

46. The harassment created a hostile work environment

47. Ms. Fullard was subjected to discriminatory behavior that was sufficiently severe or pervasive enough to create a discriminatorily hostile and/or abusive work environment.

48. Ms. Fullard made it clear to Mr. Nutter that she did not like the way he was treating her, but he continued to sexually harass her.

49. Ms. Fullard reported to a manager, Mr. Clifton, that Mr. Nutter was sexually harassing her.

50. Ms. Fullard reported to Mr. Cruz, Human Resources Department, that Mr. Nutter was sexually harassing her.

51. After more than two months of investigating the allegations of workplace harassment, Mr. Cruz issued an Investigation Determination **substantiating that inappropriate conduct occurred.**

7

52. The City's actions constitute harassment and discrimination against Ms. Fullard based on her sex, female.

53. The City is liable to Ms. Fullard for the acts of Mr. Nutter, the Emergency Communications Director of the Raleigh-Wake Emergency Communications Center.

54. Mr. Nutter made unwelcome sexual advances toward Ms. Fullard and abused his position of authority.

55. Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-5(f) *et seq.* prohibits discriminatory treatment in employment on the basis of sex, sexual harassment and a hostile work environment.

56. The conduct and communication of the City and its agents, representatives and employees, substantially interfered with Ms. Fullard's employment and created an intimidating, hostile, and offensive work environment, in violation of 42 U.S.C. § 2000e-5(f) *et seq.*

57. The City's conduct further violated 42 U.S.C. § 2000e-5(f) *et seq.* in that:

    a. The City failed to provide Ms. Fullard with employment conditions and relationships where she could safely work, free from verbal and physical sexual harassment;

    b. The City failed to respond promptly and properly to Ms. Fullard's complaints of sexual harassment;

    c. The City failed to take appropriate action when it knew or should have known of the sexual harassment and the hostile work environment it had allowed; and

    d. Upon information and belief, the City failed to implement and enforce an effective anti-sexual harassment policy for its management, staff and employees.

58. The actions of the City constitute unlawful, intentional discrimination within the meaning of the Title VII.

59. Ms. Fullard has suffered compensatory damages in an amount to be determined at trial as a proximate result of the conduct as alleged herein.

60. Ms. Fullard is entitled to recover reasonable attorneys' fees as necessary for the prosecution of this action.

## VI. SECOND CLAIM FOR RELIEF:

### (Retaliation)

61. Ms. Fullard adopts and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

62. Ms. Fullard's refusal to participate in the kind of relationship that Mr. Nutter apparently wanted with her and/or her reporting his sexual harassment of her led to a tangible employment action, namely, her dismissal from employment.

63. The City's actions constitute retaliation against Ms. Fullard.

64. The City is liable to liable to Ms. Fullard for the acts of Emergency Communications Director, Dominick Nutter.

65. Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-5(f), *et.seq*. prohibits retaliatory dismissals for complaining about and refusing to participate in sexual conduct with an agent of the employer.

66. The actions of the City as set forth herein constitute unlawful, intentional discrimination within the meaning of Title VII.

67. Ms. Fullard has suffered compensatory damages in an amount to be determined at trial as a proximate result of the conduct of the City as alleged herein.

68. Ms. Fullard is entitled to recover reasonable attorneys' fees as necessary for the prosecution of this action.

## VII. PRAYER FOR RELIEF

WHEREFORE, Ms. Fullard respectfully requests the following relief:

1. That the Court declare that the acts and practices complained of herein are in violation of Title VII of the 1964 Civil Rights Act.

2. That Ms. Fullard have and recover of the City for sexual discrimination and harassment in violation of Title VII of the 1964 Civil Rights Act, compensatory damages in an amount to be determined at trial.

3. That the Court award Ms. Fullard reasonable attorneys' fees as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-(6)(k).

4. That the Court direct Defendant to pay Ms. Fullard such interest as may be allowed by law.

5. That the costs of this litigation be taxed against the City.

6. That the Court order such other and further relief as may be just, proper, and necessary to afford complete relief to Ms. Fullard.

This the 3rd day of November, 2023.

**EDMISTEN & WEBB LAW**

/s/ *William W. Webb, Jr.*
William W. Webb, Jr.
118 St. Mary's Street
2nd Floor
Raleigh NC 27605
woodywebbjr@ew-law.com
(919) 831-8700

## CERTIFICATE OF SERVICE

The foregoing document was served on the following parties via the CM/ECF System of the United States District Court for the Eastern District of North Carolina:

Alice Tejada
alice.tejada@raleighnc.gov
Senior Associate City Attorney
PO Box 590
Raleigh NC 27602

This the 3rd day of November, 2023.

**EDMISTEN & WEBB LAW**

  /s/ *William W. Webb, Jr.*
William W. Webb, Jr.
118 St. Mary's Street
2nd Floor
Raleigh NC 27605
woodywebbjr@ew-law.com
(919) 831-8700

11