IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO.2:23-CV-49

| | |
|---|---|
| CHANDRA FULLARD, )<br>  Plaintiff, )<br> )<br>vs. )<br> )<br>CITY OF RALEIGH and )<br>RALEIGH-WAKE EMERGENCY )<br>COMMUNICATIONS CENTER, )<br>A DEPARTMENT OF THE )<br>CITY OF RALEIGH )<br>  Defendant. ) | RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

COMES NOW, undersigned counsel for Plaintiff, Chandra Fullard ("Plaintiff" or "Fullard"), and hereby responds in opposition to Defendants' Motion to Dismiss [DE 9].

Lest it be forgotten by the well-written, but deficient, contentions of the Defendant in its Motion to Dismiss and Memorandum pursuant to Federal Rule of Civil Procedure 12(b)(6), this case, at its very core, invokes a cornerstone civil rights anti-discrimination statute from the Civil Rights Act of 1964 embodied in Title VII.

A commentator has observed that:

**Title VII of the Civil Rights Act of 1964 is considered to be the most important equal opportunity law ever enacted because it contains the broadest coverage, prohibition and remedies to individuals [in the employment arena which is the essence of the capitalistic system in the United States].**

This seminal piece of federal legislation prohibits workplace discrimination based on race, religion, color, national origin, <u>and sex</u>, including gender identity, sexual orientation, and pregnancy (emphasis supplied).

1

It is now axiomatic that the prohibition against discrimination based on sex includes sexual harassment in the workplace creating a hostile work environment which admittedly in certain contexts must be severe to be actionable. As Justice Souter once noted, Title VII is not a Code of Civil Conduct. Nonetheless, allegations of sexual misconduct are not to be brushed aside. The plethora of examples of sexual misconduct or harassment are legion and entail (1) physical, (2) verbal and (3) visual.

Thus, this is the background of the case at bar. Ms. Fullard complains of <u>specific occasions (including dates)</u> when her direct supervisor went out of his way to engage in sexually explicit and implicit conduct directed at her creating a hostile work environment. The Defendant itself even substantiated her allegations and yet the offending supervisor ostensibly remains in a position to continue his misconduct.

The Defendant now moves to dismiss this case under Fed. R. Civ. P. 12(b)(6) [the motion under Fed. R. Civ. P. 12(b)(2) is not addressed herein as the Complaint has been amended to reflect the correct party Defendant].

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests". *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Fed. R. Civ. P. 1 provides the framework for applying and interpreting all the federal rules of civil procedure:

> **These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.**

So, a well-pleaded complaint may proceed even if it appears "that a recovery is very

2

remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974). As the Supreme Court held in *Twombly* the Rule 8 pleading standard does not require "detailed factual allegations" [which are nevertheless patently ever-present in the instant Complaint] "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation". *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint, to survive a 12(b)(6) Motion to Dismiss must contain sufficient factual matters, accepted as true, "to state a claim for relief that is plausible on its face". *Iqbal* and *Twombly*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* and *Twombly*.

Unlike the instant case, *Iqbal* was unable to "nudge his claims of insidious discrimination across the line from conceivable to plausible". *Iqbal* and *Twombly*.

The following detailed occasions of sexual misconduct/harassment by Ms. Fullard's direct supervisor were pled with distinct specificity:

1. In late August, Mr. Nutter asked Ms. Fullard to come around to his side of the desk to view an approximately seven (7) minute training video. After acquiescing, and while she was watching the video, Ms. Fullard noticed that he stared at her breasts during the entire duration of the video. This incident caused her severe anxiety and depression.

2. In late August/early September of 2021, Ms. Fullard was carrying work items when she encountered Mr. Nutter. He offered to carry some of the items she was holding and then purposely touched her breasts when he grabbed the items from her.

3

3. On another occasion, Mr. Nutter interrupted a conversation Ms. Fullard was having with another manager and stated, "You're buttering the wrong bread, I'm the one you need to talk to if you want to get what you need."

4. Another incident occurred when Mr. Nutter stated to Ms. Fullard, "You never thanked me by the way," to which she replied, "thank you for what?" to which he stated "for the money in your bank account. I'll give you everything you want." She returned to her office and was so upset by this sexually suggestive interaction that other employees asked if she was alright.

5. In October of 2021, during a video call, Mr. Nutter was unaware that there were **two (2) other female staff members** at an in-person meeting with Ms. Fullard. He advised that he was calling her specifically so that she could see the words coming out of his mouth, then licked his lips and stated, "All you have to do is come to me, and I'll give you everything you want and need; just come for me." He continued this type of conversation for approximately ten (10) minutes without realizing the other two female employees were watching and listening.

The Defendant in its 12(b)(6) Motion to Dismiss ignores the *Twombly* and *Iqbal* pleading standard in favor of examining each specific allegation of sexual misconduct/harassment to determine, *inter alia*, if the [mis]conduct was welcome or unwelcome or whether perhaps it might have a viable defense. Ms. Fullard herein suggests that such an approach completely disregards and is incompatible with the Federal Rules of Civil Procedure, in particular Fed. R. Civ. R. 1 and 8(a)(2).

This Court should no more adopt such an approach then the Supreme Court did in refusing to ratify the "no set of facts determination" long the gold standard for considering 12(b)(6) Motions to Dismiss. *Twombly* citing *Conley v. Gibson*, 355 U.S. 45-46.

This the 13th day of November, 2023.

4

**EDMISTEN & WEBB LAW**

  /s/  *William W. Webb, Jr.*
William W. Webb, Jr.
118 St. Mary's Street
2nd Floor
Raleigh NC 27605
[woodywebbjr@ew-law.com](mailto:woodywebbjr@ew-law.com)
(919) 831-8700

5

## **CERTIFICATE OF SERVICE**

The foregoing document was served on the following parties via the CM/ECF System of the United States District Court for the Eastern District of North Carolina:

Alice Tejada
alice.tejada@raleighnc.gov
Senior Associate City Attorney
PO Box 590
Raleigh NC 27602

This the 13th day of November, 2023.

                                      **EDMISTEN & WEBB LAW**

                                      */s/ William W. Webb, Jr.*
                                      William W. Webb, Jr.
                                      118 St. Mary's Street
                                      2nd Floor
                                      Raleigh NC 27605
                                      woodywebbjr@ew-law.com
                                      (919) 831-8700