UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Civil Action No. 2:23-CV-00049-D-BM

| | | |
|---|---|---|
| CHANDRA FULLARD, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF DEFENDANTS' MOTION TO** |
| v. | ) | **DISMISS AMENDED** |
| | ) | **COMPLAINT PURSUANT TO** |
| CITY OF RALEIGH and RALEIGH- | ) | **FED. R. CIV. P. 12(b)(2) and** |
| WAKE EMERGENCY | ) | **12(b)(6)** |
| COMMUNICATIONS CENTER, A | ) | |
| DEPARTMENT OF THE CITY OF | ) | |
| RALEIGH, | ) | |

Defendants.

**NOW COME** Defendants City of Raleigh and Raleigh-Wake Emergency Communications Center, a Department of the City of Raleigh, by and through undersigned counsel and submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Chandra Fullard's Amended Complaint.

## STATEMENT OF THE CASE

Plaintiff Chandra Fullard ("Plaintiff") filed a Complaint against Raleigh-Wake Emergency Communications Center, a Department of the City of Raleigh ("ECC"), on August 30, 2023. [D.E. 1.] The Complaint alleged violations of Title VII of the Civil Rights Act of 1964, as amended. *Id*. The City of Raleigh ("City") timely waived service of process and insufficiency of process on September 8, 2023, within the time provided by Fed. R. Civ. P. 4(d)(3). [D.E. 6.] ECC timely filed a motion to dismiss the Complaint and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6), for lack of the Court's personal jurisdiction over the ECC, and for Plaintiff's failure to state a claim upon which relief can be granted. [D.E. 9 and 10.]

On November 3, 2023, Plaintiff filed an Amended Complaint, which added the City as a

defendant in this matter. [D.E. 11.] On November 13, 2023, Plaintiff filed a response to ECC's motion to dismiss. [D.E. 13.] Because "an amended pleading ordinarily supersedes the original and renders it of no legal effect[,]" and renders moot a pending motion to dismiss the original complaint, Defendants now file a motion to dismiss Plaintiff's Amended Complaint within the time provided by Fed. R. Civ. P. 15(a)(3). *Young v. City of Mount Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001) (citation omitted). ECC requests dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction as ECC is not an entity that can be sued in North Carolina. ECC and the City request dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

The following facts are alleged in Plaintiff's Amended Complaint, and, are accepted as true for the purposes of a ruling on a motion to dismiss. *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). While the court "must take the facts in the light most favorable to the plaintiff, [the court] need not accept the legal conclusions drawn from the facts. *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *See also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986) (on a motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

On June 1, 2021, Plaintiff began her employment with the City in the position of Training and Development Analyst, with a working title of Training Manager. [D.E. 11 ¶¶ 9-10.] Plaintiff's primary job duties were to develop, plan, and administer ECC's in-house Training Academy. *Id*. at ¶ 11. Plaintiff's direct supervisor was Dominick Nutter ("Nutter"), the Director of ECC. *Id*. at ¶ 13.

2

Plaintiff did not experience any issues during the first few months of her employment. *Id.* at ¶ 14. However, in late August 2021, Mr. Nutter scheduled a meeting with Plaintiff in his office, and upon her arrival, Mr. Nutter requested that Plaintiff close the door. Mr. Nutter then asked Plaintiff to move her chair closer to his desk. *Id.* at ¶ 15. Mr. Nutter further asked Plaintiff to come around to his side of the desk to view an approximately seven (7) minute training video. Plaintiff noticed that Mr. Nutter was staring at her breasts during the time that she watched the entire video. Plaintiff alleges that the incident caused her severe anxiety and depression. *Id.* at ¶ 16.

On or about late August or early September 2021, Mr. Nutter offered to assist Plaintiff with carrying items that she was holding. Plaintiff alleges that Mr. Nutter purposely touched her breasts when he grabbed the items from her. *Id.* at ¶ 17.

On another occasion, Mr. Nutter interrupted Plaintiff's conversation with another manager and told her, "You're buttering the wrong bread, I'm the one you need to talk to if you want to get what you need." *Id.* at ¶ 18.

On a separate occasion, Mr. Nutter told Plaintiff, "You never thanked me by the way." When Plaintiff asked, "[T]hank you for what?", Mr. Nutter responded, "[F]or the money in your bank account. I'll give you everything you want." *Id.* at ¶ 19. Plaintiff returned to her office so upset by what she alleges was a sexually suggestive interaction that another employee asked her if she was alright. *Id.*

On another occasion, Mr. Nutter asked Plaintiff how she could afford her vehicle. When Plaintiff responded that the vehicle belonged to a female family member, Mr. Nutter stated, "Oh, she must have money. I don't want you anymore, I want her." *Id.* at ¶ 20.

Plaintiff further alleges that, on multiple occasions, Mr. Nutter demanded that she visit his office for what she characterizes as unnecessary reasons. Plaintiff had a conversation with another manager, Aparicio Clifton ("Clifton") about the frequency of the meetings, letting him know that she felt the demands were inappropriate, especially with the COVID restrictions that were in place during that time. *Id*. at ¶ 21.

A final incident occurred in October 2021, when Mr. Nutter called Plaintiff on Microsoft TEAMS to thank her for asking him to approve a work request. *Id*. at ¶ 22. Plaintiff alleges that Mr. Nutter was unaware that two (2) other female employees were in an in-person meeting with Plaintiff when he called. Mr. Nutter advised that he was calling her so that Plaintiff could see the words coming out of his mouth. Mr. Nutter then licked his lips and said, "All you have to do is come to me, and I'll give you everything you want and need, just come for me." Mr. Nutter continued this type of conversation for ten (10) minutes without realizing the two (2) female staff members were watching and listening to him. *Id*. at ¶ 23. Both employees encouraged Plaintiff to file a complaint with Human Resources immediately. *Id*. at ¶ 24.

Plaintiff filed a complaint with Mr. Clifton, another ECC manager. *Id*. at ¶ 25, 50. Mr. Clifton then contacted the City of Raleigh's Human Resources Department, and Antonio Cruz ("Cruz") of the HR Department investigated the complaint. *Id*. at ¶ 25.

On October 21, 2021, Plaintiff was concerned that Mr. Nutter was aware of the investigation because his conduct towards her changed. Plaintiff alleges that Mr. Nutter ignored her and acted in a disrespectful and unprofessional manner. *Id*. at ¶ 26.

On October 22, 2021, Plaintiff alleges that she communicated to Mr. Cruz that she felt that she was facing retaliation and requested that something be done in the interim to address her concerns, but that Mr. Cruz's response was no. *Id*. at ¶ 27.

Plaintiff alleges someone told her that the investigation would be concluded in approximately two (2) weeks. Plaintiff requested to take her vacation and sick leave to avoid the stress and anxiety she was feeling at work. *Id*. at ¶ 28. Plaintiff exhausted her paid leave on or after three (3) weeks. The investigation had not concluded at that time. Plaintiff requested and was denied additional paid leave. *Id*. at ¶ 29.

On January 4, 2022, Mr. Cruz's "investigation was able to substantiate allegations that inappropriate conduct occurred", and that, "[m]anagement will take appropriate corrective action." [D.E. 11-3.]

Plaintiff was offered the option of returning to work with a different supervisor, where she would have minimal interaction with Mr. Nutter, or she could also take another position with the City. [D.E. 11 ¶ 31.] Plaintiff alleges that she was "terrified to return to work with Mr. Nutter[.]" *Id*. Plaintiff did not want to move to another position because her entire career had been spent in emergency management services. *Id*. Instead, Plaintiff "continued to argue for Mr. Nutter to be removed from his position." *Id*. at ¶ 32.

In January 2022, Plaintiff alleges that the City notified her that it had hired someone to temporarily fill her position and that her office had been cleaned out. *Id*. at ¶ 33. "On February 1, 2022, the City sent Ms. Fullard a 30-day Notice of Termination due to her failure to accept reasonable accommodations." *Id*. at ¶ 34. Plaintiff, through her attorney, notified the City that the proposed accommodations were not reasonable. *Id*. at ¶ 35. Plaintiff alleged retaliation for having filed a complaint against Mr. Nutter. *Id*.

The Amended Complaint alleges that Plaintiff remained out of work due to post-traumatic stress and significant anxiety and psychological issues. *Id*. at ¶ 37.

5

On September 27, 2022, Plaintiff filed a charge alleging sexual harassment, sex discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). [D.E. 12.] The EEOC issued Plaintiff a Dismissal and Notice of Rights letter on June 4, 2023. [D.E. 11-2.]

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICITION OVER DEFENDANT ECC BECAUSE IT CANNOT BE SUED AS AN ENTITY

Pursuant to Fed. R. Civ. P. 17(b), "[t]he capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *Evans v. Pitt Cnty. Dept. of Soc. Serv.*, 972 F.Supp.2d 778, 788 (E.D.N.C. 2013) (*quoting Avery v. Burke Cnty.*, 660 F.2d 111, 114 (4th Cir. 1981)). In North Carolina, "departments of municipalities and counties are not susceptible to suit without statutory authorization." *Evans*, 972 F.Supp.2d at 788 (*citing Martin v. Mecklenburg Cnty. Park and Recreation Dept.*, No. 3:06-CV-290, 2006 WL 3780418, at *2 (W.D.N.C. Dec. 20, 2006)). "[D]epartments of cities cannot be sued alone." *Martin*, 2006 WL 3780418, at *2.

In the instant case, the Amended Complaint names Raleigh-Wake Emergency Communications Center, a Department of the City of Raleigh as a defendant. [D.E. 11 ¶ 8.] The Amended Complaint cites no statutory authority conferring personal jurisdiction on the ECC. As such, the City respectfully requests that the ECC be dismissed from this matter for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### II. THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE TITLE VII CLAIM BECAUSE PLAINTIFF DID NOT TIMELY FILE HER CHARGE WITH THE EEOC

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal and factual sufficiency.

6

*See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); and, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007). Where the complaint, on its face, alleges sufficient facts to provide the defendant with an affirmative defense, such as a time-bar defense, it is appropriate to make such a defense through a 12(b)(6) motion to dismiss. *Goodman, v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

In order to proceed with a claim under Title VII, a plaintiff must file her Charge with the Equal Employment Opportunity Commission ("EEOC") within the required 180-day time period that is statutorily prescribed by 42 U.S.C. § 2000e-5(e). *See Hearn v. Town of Oak Island*, No. 21-1598, 2022 WL 7935994, at *1 (Oct. 14, 2022) (unpublished) (*citing Walton v. Harker*, 33 4th 165, 175 (4th Cir. 2022). This "exhaustion requirement is a non-jurisdictional 'processing rule, albeit a mandatory one' that must be enforced when properly raised." *Id.* The 180 days begin when an employee receives a "final and unequivocal" notice of her termination. *Id.* (*quoting English v. Whitfield*, 858 F.2d 957, 961-62 (4th Cir. 1988). Furthermore, "the filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982).

The Amended Complaint alleges that, on "February 1, 2022, the City sent Ms. Fullard a 30-day Notice of Termination due to her failure to accept reasonable accommodations." [D.E. 11 ¶ 34.] The Amended Complaint further alleges that Plaintiff filed a charge with the EEOC on September 27, 2022. *Id.* at ¶ 2. The Amended Complaint fails to allege any further adverse actions subsequent to February 1, 2022. The 180-day time period from February 1, 2022 was July 31, 2022. July 31, 2022 was a Sunday. As such, Plaintiff's 180-day deadline to file a charge was August 1, 2022, on Monday. Even assuming that the final and unequivocal notice of Plaintiff's

7

separation from the City was the 30 days after February 1, 2022 when the separation was to take effect, Plaintiff still did not file a timely charge because 180 days from March 3, 2022 was August 30, 2022. To the extent that Plaintiff wishes to argue that her communications, through her attorney, were evidence of additional adverse actions, the Amended Complaint does not allege any additional adverse actions regarding these communications. *Id*. at ¶ 35. The law is clear that, "the 180-day period began to run on February [1] when [she] was told [she] would be relieved of [her] position, and the [September] filing with the EEOC was thus time-barred." *Price*, 694 F.2d at 965.

Since Plaintiff filed her charge with the EEOC outside of the statutorily prescribed 180-days, Defendants respectfully request that the Court grant their motion to dismiss.

### III. THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE TITLE VII CLAIM OF DISCRIMINATION BASED ON A HOSTILE WORK ENVIRONMENT AGAINST THE CITY AS A MATTER OF LAW

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. *Iqbal*, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) challenge, the complaint must state a claim that is plausible on its face, meaning that the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. When a plaintiff's complaint "alleges in a conclusory manner that she was terminated based upon [a protected category], it does not contain facts establishing the plausibility of that claim." *Gaston v. Anson County School District*, No. 3:17-CV-002320RJC-DSC, 2017 WL 7790224, at *3 (W.D.N.C. Aug. 23, 2017) (*citing Coleman*, 626 F.3d at 190-91).

8

An allegation must do more than set forth the legal standard and call it a fact. *See Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. App'x 351, at *3 (4th Cir. 2009) (unpublished).

The claims need not contain detailed factual allegations but must contain sufficient factual allegations to suggest the required elements of a cause of action. *See Twombly*, 550 U.S. at 555. A court need not accept as true legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[A] formulaic recitation of the elements of a cause of action will not do," nor will mere labels and legal conclusions suffice. *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

The Amended Complaint's First Claim for Relief alleges a sexual harassment and discrimination claim based on a hostile work environment. [D.E. 11 ¶¶ 42-60.] As Plaintiff only refers to discrimination regarding allegations of sexual harassment and a hostile work environment, Plaintiff's claim of discrimination is limited to her hostile work environment allegations. *Id.* at ¶¶ 47, 52, 55-58.

To establish a hostile work environment claim under Title VII, the plaintiff must show that, 1.) the conduct is unwelcome; 2.) it is based on the employee's sex; 3.) it is sufficiently pervasive or severe to alter the conditions of employment and to create an abusive work environment; and, 4.) there is a basis for imputing liability on the employer. *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). If the alleged harasser is a supervisor with immediate authority over the employee, the employer is subject to vicarious liability. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**A. THE AMENDED COMPLAINT LACKS ANY FACTS TO SHOW THAT THE CONDUCT WAS UNWELCOME**

"Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Roberts v. Glen Industrial Group, Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (*quoting*, *Albero v. City of Salisbury*, 422 F.Supp.2d 549, 557–58 (D. Md. 2006) (*citing Scott v. Ameritex Yarn*, 72 F.Supp.2d 587, 591 (D.S.C. 1999)). The inquiry is "whether [the plaintiff] by her conduct indicated that the alleged [sexual harassment was] unwelcome ..." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In the entirety of the Amended Complaint, Plaintiff alleges once under her First Claim for Relief that she "made clear to Mr. Nutter that she did not like the way he was treating her." [D.E. 11 ¶ 48.] However, the Amended Complaint lacks any facts as to when, under what circumstances or how she made clear that "she did not like the way he was treating her." *Id*.

## B. THE CONDUCT ALLEGED IN THE AMENDED COMPLAINT IS NOT SUFFICIENTLY PERVASIVE OR SEVERE TO ALTER THE CONDITIONS OF PLAINTIFF'S EMPLOYMENT OR TO CREATE A HOSTILE WORK ENVIRONMENT UNDER TITLE VII

A claim of sexual harassment is actionable if the environment is both subjectively and objectively offensive based on one that a reasonable person would find hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993). To determine whether the harassment is sufficiently pervasive or severe pursuant to Title VII's requirements, the harassment must be examined under the totality of the circumstances. *See Hopkins v. Baltimore*, 77 F.3d 745, 753 (4th Cir. 1996). The totality of the circumstances includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

"[T]he objective prong of the [hostile work environment] test is 'designed to disfavor claims based on an individual's hyper-sensitivity.'" *Andrews v. Staples the Office Superstore East,*

*Inc.*, No.: 7:11-CV-00037, 2013 WL 3324227, at *9 (W.D. Va. July 1, 2013) (where employee resigned and claimed a constructive discharge due to credible ongoing effects from emotional injuries) (*quoting EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010)). A showing of treatment for psychological injuries due to the harassment is insufficient on its own to show that the harassment was sufficiently severe or pervasive to alter the conditions of employment. *See Vaughn-Walker v. Brown*, 163 F.3d 600, *2 (4th Cir. 1998) (unpublished) (a claim of psychological injury after the harasser made comments about the plaintiff's "sexy" appearance and "big, beautiful legs" and "popped" her right buttock with a sign-out book was insufficient to show that harassment was severe or pervasive).

In the instant case, the Amended Complaint alleges that, between late August 2021 and sometime in October 2021, Mr. Nutter: 1.) made inappropriate comments on four occasions [D.E. 11 ¶¶ 18-20, 23]; 2.) stared at Plaintiff's breasts on one occasion for approximately seven (7) minutes while she was watching a training video in his office within close proximity to him at his request [D.E. 11 ¶ 16]; 3.) touched her breasts when he grabbed items from her after asking if he could help her with the items [D.E. 11 ¶ 17]; and, 4.) required Plaintiff to meet in his office on multiple occasions for reasons that Plaintiff alleges were unnecessary. [D.E. 11 ¶ 21.] The Amended Complaint does not allege any inappropriate sexual misconduct during the meetings that she deemed to be unnecessary.

Courts have held repeatedly that conduct similar to Mr. Nutter's alleged conduct is insufficiently severe or pervasive to alter an employee's condition of employment or to create hostile work environment due to sexual harassment. In *Singleton v. Department of Correctional Educ.*, 115 F. App'x 119, 123 (4th Cir. 2004) (unpublished), a female employee was subjected to a supervisor who stared at her breasts, measured her skirt length on one occasion for compliance

with the dress code and told her it looked "real good, "referenced her attractiveness, referenced his own physical fitness, asked if he made her nervous, and told her that he would not let her go to work in a prison if he was her husband. *Id.* at 120. The Court noted that the supervisor had not requested sexual favors, had not touched her inappropriately or discussed sexual subjects, had not shown her obscene materials or told her vulgar jokes, and had not threatened her. *Id*. at 122. *See also Hopkins*, 77 F.3d at 753-54 (summary judgment for employer where supervisor stared at employee in the bathroom because the employee did not assert any sexual propositions or touching);

The Amended Complaint alleges inappropriate touching on one occasion. In other cases where a plaintiff has alleged inappropriate touching of a sexual nature on one or two occasions, the courts have decided that such allegations are insufficient to support a hostile work environment claim. *See Shaver v. Dixie Trucking Co., Inc.*, No. 98-1978, 181 F.3d 90 at \*3 (4th Cir. May 24, 1999) (unpublished) (two hugs and a knee rub were inappropriate, but insufficient to support a hostile work environment claim); *Pesso v. Montgomery Gen. Hosp.*, No. 97-1954, 181 F.3d 90, \*1-2 (4th Cir. May 21, 1999) (unpublished) (no hostile work environment was found where the supervisor suggested that she and the employee get a room together at a conference, rubbed the employee's arm, asked what he would taste like, asked him if he was always so handsome and popular with the girls and grabbed his arm again and told him he was so muscular); *Murray v. City of Winston-Salem, N.C.*, 203 F.Supp.2d 493, 498-99 (M.D.N.C. 2002) (four incidents, two of which included touching of the employee's thigh, one of making an "ummm" noise when the employee walked by, and one comment about how good she looked in jeans were insufficient to show that the harassment was severe or pervasive to alter the conditions of employment); *HonerKamp v. Charlotte-Mecklenburg Hosp. Auth.*, No. 1:21-cv-218, 2021 WL 3475679, at \* 4

12

(M.D.N.C. Aug. 6, 2021) (hostile work environment claim dismissed for lack of severe or pervasive conduct where the alleged harasser pulled the plaintiff's ponytail, touched her shoulders and neck, made unspecified sexual advances, and asked, "why won't you let me touch or hug you?"); *Moret v. Geren*, 494 F.Supp.2d 329, 342 (D. Md. 2007) (summary judgment for employer on hostile work environment claim because supervisor leering at employee, making comments about her appearance and makeup, suggesting that she date her son, and asking for her to massage his buttocks fell short of the third prong of the hostile work environment test); *Byers v. HSBC Finance Corp.*, 416 F.Supp.2d 424, 434 (E.D. Va. 2006) (summary judgment for employer where employee did not experience frequent comments, he was not sexually propositioned, and there was no sexual discussion, insults or teasing); *Courtney v. North Carolina Dept. of Transp.*, No. 1:09CV680, 2010 WL 492334, at *14 (M.D.N.C. Nov. 29, 2010) (the Court stated that, "two isolated incidents of Captain Blake 'ogling at' Plaintiff and 'staring at [her] breasts . . . will not support a hostile work environment.'"); *Freeman v. Science Applications International Corporation*, No.: 1:19-cv-1502(LMB/MSN), slip op. at *1, 6-7 (E.D. Va. Nov. 24, 2020) (summary judgment for employer where supervisor stared at employee's groin during a meeting in her office and put her hand on his shoulder and sighed); *Coleman v. Pentagon Federal Credit Union*, 1:17-CV-18-LMB-IDD, 2017 WL 1044693, *3 (E.D. Va. Mar. 17, 2017) (dismissing sexual harassment claim where it was held that a single incident of touching with other generalized allegations was not sufficiently severe or pervasive to alter the conditions of employment); *Sraver v. Surgical Monitoring Serv., Inc.*, No. CCB-05-1331, 2006 WL 2190727, at *1-2, 4 (D. Md. July 27, 2016) (questions about the employee's sex life and glancing and commenting on the employee's breasts were insufficient to form the basis of severe or pervasive conduct to alter the conditions of employment); *Freire v. Keystone Title Settlement Servs., Inc.*, No. AW-08-2976,

13

13

2009 WL 5217033, at *5 (D. Md. December 30, 2009), *aff'd*, 389 Fed. Appx 306 (4th Cir. 2010) (summary judgment for employer affirmed by the Fourth Circuit Court of Appeals where the Court found that a supervisor complimenting employee on her breasts while hugging her and telling her she looked "hot and sexy" were insufficient to state a hostile work environment claim).

Additionally, where "most of the conduct complained of by the plaintiff [is] limited to sexual innuendos" they are insufficient to interfere with someone's work performance. *Chapman v. County of Greenville*, No.: 6:06-2623-RBH, 2008 WL 893203, at *10 (D.S.C. Mar. 28, 2008) (summary judgment for the employer where the record lacked any evidence of overt sexual propositions and evidence was that the supervisor had a "sexually suggestive demeanor" when supervisor referred to the employee as a pretty girl, made 'um, um, um' sounds when she wore a leather skirt, and commented that his office was not hot until she arrived); *see also Hopkins*, 77 F.3d at 753 (court found that alleged conduct that was sexually neutral or ambiguous would not interfere with someone's work performance); *Ammirante v. Ohio Cnty. Bd. Of Educ.*, No. 5:19-CV-12. 2019 WL 2870101, *6 (N.D. W. Va. July 3, 2019) (hostile work environment claims dismissed where allegations included ogling, flirting, and comments that were not specific to gender were found to be "sexually neutral or, at most, ambiguous"); and, *Hosey v. Enterprise Leasing Company – Southeast, LLC*, No.: 3:15CV3282-JMC-TER, 2017 WL 713927, at *9 (D.S.C. January 17, 2017) (summary judgment for employer on hostile work environment claim where supervisor made sexual gestures and comments even after she told him they were unwanted).

None of the comments the Amended Complaint attributes to Mr. Nutter make any explicit reference to any sexual topic, overt sexual propositions, a request for sexual favors, sexual or vulgar jokes, any type of threats, or any showing of sexual materials. Assuming that the comments

14

can be reasonably construed as sexual innuendos, they are "insufficient to interfere with someone's work performance." *Chapman*, 2008 WL 893203, at *10.

### C. EVEN IF THE AMENDED COMPLAINT COULD ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM, THE AMENDED COMPLAINT SUPPORTS THE CITY'S *FARAGHER/ELLERTH* AFFIRMATIVE DEFENSE

If the employee can establish a hostile work environment existed, the employer is entitled to an affirmative defense if she can show, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee reasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807.

The *Faragher/Ellerth* affirmative defense is not available if the City took a tangible employment action against Plaintiff *Id.* at 808. A tangible employment action is "the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257, 2269 (1998). "[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." *Id.* A tangible employment action requires the "imprimatur of the enterprise and use of its internal processes." *Id.* "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. It is the supervisor who is required to engage in the tangible employment action. *See Penn. State Police v. Suders,* 542 U.S. 129, 141, 124 S.Ct. 2342, 2351 (2004) (the supervisor's official act must precipitate the adverse action); and, *Crockett v. Mission Hosp., Inc.*, 717 F.3d

348, 356 (4th Cir. 2013) (no tangible employment action was found where a decision to suspend the employee was not made by her supervisor, but by someone else for reasons unrelated to her complaint). In the instant case, the affirmative defense is available to the City because the Amended Complaint does not allege that Mr. Nutter took a tangible employment action against Plaintiff.

1. *The City Took Measures Reasonably Calculated to Prevent and Promptly Correct Sexually Harassing Behavior.*

The first prong of the defense is met when the employer has "promulgated an antiharassment policy with complaint procedure." *Faragher*, 524 U.S. at 807. In determining if an employer has taken measures reasonably calculated to prevent future harassment, courts review "the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment." *Chestnutt v. Town of Ahoskie, N.C.*, No. 2:21-CV-4-BO, 2021 WL 6125892, *5 (E.D.N.C. Aug. 26, 2021) (*quoting Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 639 F.3d 658, 669-70 (4th Cir. 2011)).

Although the Amended Complaint alleges that, "the City failed to implement and enforce an effective anti-sexual harassment policy for its management, staff and employees," [D.E. 11 ¶ 57d.] the Amended Complaint lacks any facts to support this legal conclusion. On the contrary, the Amended Complaint alleges that, in October 2021, Plaintiff immediately filed a complaint after two female colleagues encouraged her to "file a complaint with Human Resources." *Id*. at ¶ 24. The Amended Complaint further alleges that Plaintiff "lodged her complaint with Mr. Clifton who then contacted Human Resources." *Id*. at ¶ 25. Mr. Cruz from the City's Human Resources Department then began an investigation. *Id*. On January 4, 2022, Mr. Cruz communicated by letter to Plaintiff that, after conducting a "thorough investigation that included interviewing all individuals" Plaintiff identified, he "was able to substantiate allegations that inappropriate conduct

occurred." [D.E. 11 ¶ 51; and D.E. 11-3.]  Mr. Cruz also informed Plaintiff that "[m]anagement will take appropriate corrective action regarding this matter."[1]  *Id*.  Plaintiff was also provided with the option of appealing the decision.  *Id*.  The Amended Complaint does not allege that Plaintiff availed herself of the ability to appeal the decision. The Amended Complaint does not allege that the harassment continued following the start of Mr. Cruz's investigation or upon its conclusion. *See HonerKamp*, 2021 WL 3475679, at * 4 (sexual harassment claim was dismissed where no further misconduct was reported after the employee complained to her employer); and *Weger v. City of Ladue*, 500 F.3d 710, 720 (8th Cir. 2007) (the employer reasonably prevented harassment when it followed its policy, which promptly ended the harassment).

2. *Plaintiff Failed to Take Advantage of Preventative or Corrective Opportunities Provided by the City.*

Title VII's "'primary objective,' like that of any statute meant to influence primary conduct, is not to provide redress, but to avoid harm." *Faragher*, 524 U.S. at 805-06, 118 S.Ct. at 2292 (*citing Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)).  The Amended Complaint corroborates that the City provided preventative or corrective opportunities to Plaintiff of which she failed to take advantage.  First, despite advice from her co-workers to complain to the City's Human Resources Department, Plaintiff reported her complaint to another ECC manager, Mr. Clifton who was subordinate to Mr. Nutter.  [D.E. 11 ¶¶ 21, 24-25.]

Even so, Mr. Clifton reported Plaintiff's complaint to the Human Resources Department, leading to an investigation of her complaint.  *Id*. at ¶ 25.  *See Dowdy v. North Carolina*, 23 F. App'x 121, 124 (4th Cir. 2001) (the employee's argument that the policy was not effective was

---

[1] Pursuant to N.C. Gen. Stat. § 160A-168, the City was prohibited from disclosing the details of the corrective action taken.

not persuasive because she reported her complaint to someone who had no authority to take corrective action). The Amended Complaint fails to allege that any further harassing conduct continued after Plaintiff reported her concerns. *See Murray*, 203 F.Supp.2d at 501 (the City promptly and reasonably corrected the conduct where it investigated upon receiving the complaint and advised the employee that her concerns were being addressed).

Also, the Amended Complaint alleges that the City offered Plaintiff two (2) options following its conclusion of the investigation. [D.E. 11 ¶ 31.] The City gave Plaintiff the option to return to work with a different supervisor with minimal contact with Mr. Nutter, or to take a position in a different City department. *Id*. Plaintiff rejected both options. *Id*. at ¶¶ 31-35. *See Wilson v. S. Nat. Bank of N.C., Inc.*, 900 F.Supp. 803, 810 (W.D.N.C. 1995) (a later transfer to separate the harasser and the plaintiff was prompt remedial action reasonably calculated to end the harassment, in response to the harasser "whacking" the plaintiff on the hip while singing a song about hips and butts, shooting rubber bands at the plaintiff's hips, and hiking up his pants to show the outline of his genitals as he went up to the plaintiff's face).

Plaintiff "argue[d] for Mr. Nutter to be removed from his position." *Id*. at ¶ 32. It appears the Amended Complaint alleges that the City's failure to remove Mr. Nutter from his position was an unreasonable failure to correct the alleged harassment. *Id*. at ¶ 57c. However, "an employee cannot dictate that the employer select a certain remedial action. . . . Title VII requires only that the employer take steps reasonably likely to stop the harassment." *Knabe v. Boury Corp.*, 114 F.3d 407, 414 (3rd Cir. 1997).

Assuming all the Amended Complaint's allegations about Mr. Nutter's conduct are true, removing Mr. Nutter from his position is not a proportional response required to avoid liability under Title VII when the remedial action taken was reasonably calculated to end the harassment.

18

*See Brown v. Perry,* 184 F.3d 388, 397 (4th Cir. 1999) (a thirty (30) day suspension and an agreement to investigate the complaint that led to no further harassment were found to be proper immediate corrective actions where the harasser kissed and groped the employee in a hotel room during a conference); *Murray*, 203 F.Supp.2d at 501 (the City promptly and reasonably corrected the conduct that included unwanted touching and sexual comments where it issued a written warning to the harasser); *Sutton v. Zemex Corp.*, 261 F.Supp.2d 392, 400 (W.D.N.C. 2003) (a written reprimand that ended the harassment from her supervisor showed the employer exercised reasonable care to prevent and correct the harassing behavior); *Wilson*, 900 F.Supp. at 810 (a written reprimand during a meeting in response to the harasser "whacking" the plaintiff on the hip while singing a song about hips and butts, shooting rubber bands at the plaintiff's hips, and hiking up his pants to show the outline of his genitals as he went up to the plaintiff's face, was prompt remedial action reasonably calculated to end the harassment); and, *Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997) (a written reprimand for making overtly sexually suggestive remarks with no further harassment following was sufficient remedial action reasonably calculated to end the harassment).

## IV. THE AMENDED COMPLAINT FAILS TO STATE A RETALIATION CLAIM

Plaintiff alleges retaliatory termination in response to her sexual harassment complaint to the City's HR Department. However, the Amended Complaint fails to assert plausible allegations of retaliation and instead provides support to show that the City did not engage in an adverse employment action. To state a retaliation claim under Title VII, a plaintiff must allege she has engaged in a protected activity, that the employer engaged in an adverse employment action, and that there is a causal link between the protected activity and the alleged employment action. *See Coleman*, 626 F.3d at 190.

"Termination will support a claim only when it was caused by discrimination." *See Baldwin v. Blue Cross Blue Shield of Ala.*, 480 F.3d 1287, 1300, 1308 (11th Cir. 2007) (termination was not discriminatory where the employee refused the option for a transfer or to participate in counseling). "When an employee voluntarily quits under circumstances insufficient to amount to a constructive discharge, there has been no 'adverse employment action.'" *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 770, 775 (4th Cir. 1997) (no adverse employment action where the employee resigned after reporting harassment, requested her job back and was not reemployed). When an employee abandons her job, she cannot show that she has been terminated, and cannot make a plausible case that her termination was in retaliation for having engaged in protected activity. *Cook v. E. Tex. State Univ.*, 142 F.3d 1279, *2 (5th Cir. 1998) (unpublished) (where the plaintiff was terminated due to job abandonment, the employer did not retaliate against her); and, *Byers*, 416 F.Supp.2d at 441 (summary judgment on retaliation claim was granted where the employer terminated the employee for failing to report to work after an accommodation was made to transfer the employee to a different office); and, *Hosey*, 2017 WL 713927, at * 8 (there was no adverse action where the employee resigned after three (3) months of medical leave, and refused to meet with the employer to discuss reconsidering her resignation).

"On February 1, 2021, the City sent [Plaintiff] a 30-day Notice of Termination due to her failure to accept reasonable accommodations." [D.E. 11 ¶ 34.] Plaintiff did not include the notice as an exhibit to the Amended Complaint. Generally, a Rule 12(b)(6) motion cannot include additional documents as part of the motion without converting it to a summary judgment motion. However, a reviewing court can consider "documents attached to the complaint, as well as those attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Philips v. Pitt Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Soliman v. Worldwide*

20

*Language Resources, Inc.*, 2016 WL 7494858, fn.1 (E.D.N.C. 2016) (job description and wage statement referred to in complaint were properly considered on a motion to dismiss).

The City's February 1, 2021 notice referenced in the Amended Complaint is two and a half (2.5) pages long and details the City's efforts to engage Plaintiff in the interactive process of returning her to work from unpaid medical leave due to psychological issues stemming from her harassment complaint. (Cruz Decl. Ex. 1 at 1) The notice reiterates that the City offered Plaintiff a return to her position with a different supervisor or a transfer to a different position with the City. *Id*. at 2. The notice informs Plaintiff that, due to her rejection of the options, it is "no longer able to hold [her] position open" and that her employment will terminate effective March 2, 2023." *Id*. Finally, the notice encourages Plaintiff "to look at City job postings and to apply for positions that match [her] experience, training, and any restrictions, if applicable, imposed by [her] doctor" and informs her to contact Mr. Cruz with any questions about position openings. *Id*. at 3.

By refusing to return to her position with a different supervisor, or to return to a different position with the City, Plaintiff abandoned her employment with the City. As such, Plaintiff cannot show that her separation from the City was an adverse employment action, and cannot show retaliation as a matter of law.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant their motion to dismiss this action in its entirety.

This the 17th day of November, 2023.

CITY OF RALEIGH
Karen M. McDonald, City Attorney

By:    /s/ Alice Tejada
       ALICE TEJADA
       Senior Associate City Attorney

21

NC State Bar No. 23909
Post Office Box 590
Raleigh, North Carolina 27602
Telephone:  (919) 996-2004
Facsimile: (919) 996-7021
Email: Alice.Tejada@raleighnc.gov
ATTORNEYS FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CIVIL ACTION NO. 2:23-CV-00049-D-BM

CHANDRA FULLARD,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        **CERTIFICATE OF SERVICE**
                                    )
CITY OF RALEIGH  and RALEIGH-       )
WAKE EMERGENCY                      )
COMMUNICATIONS CENTER, A            )
DEPARTMENT OF THE CITY OF           )
RALEIGH,                            )
                                    )
        Defendants.

    I hereby certify that on November 17, 2023, I electronically filed the foregoing document

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

counsel of record shown below by email addressed as follows:

    William W. Webb, Jr.
    EDMISTEN & WEBB LAW
    woodywebb@mindspring.com

                            Respectfully submitted,

                            **CITY OF RALEIGH**
                            **Karen M. McDonald, City Attorney**

                            By:    /s/ Alice Tejada
                                   ALICE TEJADA
                                   Senior Associate City Attorney
                                   N.C. Bar No. 23909
                                   Raleigh, NC  27602
                                   Telephone:  (919) 996-2004
                                   Facsimile:   (919) 996-7021
                                   Email: Alice.Tejada@raleighnc.gov
                                   ATTORNEYS FOR DEFENDANTS

23